# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YVONNE BARANOWSKI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 15 C 2939 ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) Judge John Z. Lee ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Yvonne Baranowski has sued Portfolio Recovery Associates, LLC ("PRA") for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(8), alleging that PRA communicated Baranowski's debt to credit reporting agencies without indicating that she had disputed the debt. The parties have cross-moved for summary judgment [84] [89], and for the following reasons, the Court grants Baranowski's motion and denies PRA's motion.

## Factual Background[1]

Baranowski fell behind on her credit card payments to Comenity Capital Bank/Home Shopping Network ("HSN credit account") in 2012. Def.'s LR 56.1(a)(3) Stmt. ¶ 1. She had used the credit card to purchase items such as clothing, small electronics, and household items. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6. Defendant PRA purchased the obligation owed on the HSN credit account in 2014, after Baranowski's debt became delinquent. Def.'s LR 56.1(a)(3) Stmt. ¶ 1.

When PRA sued Baranowski regarding the debt, she hired attorneys during the first week of October 2014. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8.[2] Baranowski met with her attorneys and reviewed her

---

[1] Unless noted otherwise, these facts are undisputed and viewed in the light most favorable to the party opposing summary judgment. *See Baptist v. Ford Motor Co.*, 827 F.3d 599, 599 (7th Cir. 2016).

[2] PRA objects to this and other statements of fact because they rely upon Baranowski's declaration, which, PRA contends, directly contradicts her prior sworn deposition testimony. Because none of the

credit report to ensure that it was accurate and to correct any inaccuracies. *Id.* ¶ 9. She told her attorneys that she did not believe that the amount of $1,550.00 was accurate and that it should have been around $700 or $800. *Id.* ¶ 10.

On October 17, 2014, Baranowski's attorneys faxed a letter to PRA that stated in part that "the amount reported is not accurate." *Id.* ¶ 11; *see* Def.'s Ex. C, 10/17/14 Letter from Attorney Finko to PRA. That day, PRA received the letter and reviewed it. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12. After receiving and reviewing the letter, PRA communicated credit information to the Experian, Equifax, and TransUnion credit-reporting agencies related to the alleged debt without also noting that the debt was disputed. *Id.* ¶ 15.

Baranowski filed this lawsuit alleging that PRA's conduct violated the FDCPA. Discovery has concluded, and the parties have cross-moved for summary judgment. PRA argues that Baranowski lacks Article III standing to bring suit. Alternatively, PRA contends that Baranowski has failed to establish an FDCPA violation and that the bona fide error defense applies. Baranowski counters that there are no triable issues of fact regarding whether PRA violated the FDCPA.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all

---

statements in Baranowski's declaration directly contradict her deposition testimony, the Court overrules PRA's objections. *Compare* Pl.'s Ex. D, Pl.'s Decl. ¶¶ 1–5, *with* Pl.'s Ex. C, Pl.'s Dep. 37:2–39:4, 40:1–21, 41:12–17, 48:11–14, 67:20–22, 72:12–18.

factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). The nonmovant "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

I.  **Standing**

To have Article III standing, Baranowski must establish "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (quotations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). PRA asserts that Baranowski has not suffered an injury in fact, relying on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

In *Spokeo*, the plaintiff alleged a violation of the Fair Credit Reporting Act based on a website's inaccurate profile of him that stated he was married with children, in his 50's, was employed and relatively affluent, and held a graduate degree—none of which were true. *Id.* at 1546. Although the Ninth Circuit held that plaintiff's allegations were sufficient for Article III standing, the Supreme Court vacated the decision and remanded the case, holding that concrete injury is required "even in the context of a statutory violation" because "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1549–50. The Court explained that "[t]his does not mean, however that the risk of real harm cannot satisfy the requirement of concreteness." *Id.* "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* "Congress may 'elevat[e] to the status of legally cognizable injuries

3

concrete, *de facto* injuries that were previously inadequate in law.'" *Id*. (quoting *Lujan*, 504 U.S. at 578). "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*

"Although the Seventh Circuit has not had occasion to consider Article III standing for FDCPA violations after *Spokeo*, several district courts within the Seventh Circuit and other circuit courts have . . . held that violations of the FDCPA constitute concrete injuries in fact, sufficient to find Article III standing." *Smith v. GC Servs. Ltd. P'ship*, No. 116CV01897RLYDML, 2017 WL 2629476, at *2 (S.D. Ind. June 19, 2017); *see Sayles v. Adv. Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016); *Flores v. Portfolio Recovery Assocs., LLC*, No. 15 C 02443, 2017 WL 5891032, at *3 (N.D. Ill. Nov. 29, 2017); *Paz v. Portfolio Recovery Assocs., LLC*, No. 15 C 5073, 2016 WL 6833932, at *2 (N.D. Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Assocs., LLC*, No. 15 C 4498, 2016 WL 6833930, at *3 (N.D. Ill. Nov. 20, 2016); *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016). And several courts have specifically held that Congress, in enacting section 1692e(8), recognized that a debt collector's failure to report a disputed debt presents a risk of real harm because it detrimentally affects one's credit score. *See Sayles*, 865 F.3d at 250 (holding that a violation of § 1692e(8) "exposed Sayles to a real risk of financial harm caused by an inaccurate credit rating."); *Flores*, 2017 WL 5891032, at *3 ("Reporting a debt on a credit report without noting a dispute poses a real risk of serious economic and reputation consequences."); *see also Brown v. R&B Corp. of Va.*, 267 F. Supp. 3d 691, 701 (E.D. Va. 2017) (same); *Bowse*, 218 F. Supp. 3d at 749 (same); *Paz*, 2016 WL 6833932, at *2 (same).

The Court finds the holdings in these cases persuasive. This case presents the precise situation envisioned by *Spokeo* in which Congress has recognized that a debt collector's failure to report a disputed debt to third parties presents a legally cognizable, concrete injury. PRA's false representation

4

that a debt had not been disputed presented a material risk of financial harm to Baranowski. Accordingly, the Court denies PRA's motion for summary judgment on the basis of standing.

## II. FDCPA Claim

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, the Act prohibits debt collectors from "[c]ommunicating . . . credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id.* § 1692e(8).

### A. Whether There Was a Dispute as to the Debt

PRA primarily argues that the debt was not disputed because the October 17, 2014 letter notifying PRA of the dispute was "cryptic." PRA's Mem. Supp. Summ. J. at 9. To the contrary, the letter to PRA stated: "the amount reported is not accurate." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11; *see* Def.'s Ex. C, 10/17/14 Letter from Attorney Finko to PRA. Far from indecipherable, this language clearly and unambiguously disputes the amount of the debt. *See Flores*, 2017 WL 5891032, at *4 (holding that the language "the amount reported is not accurate" conveys a dispute); *Emerson v. Fid. Capital Holdings, Inc.*, No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015) (same); *Bowse*, 218 F. Supp. 3d at 751 (same); *Gomez v. Portfolio Recovery Assocs.*, No. 15 C 4499, 2016 WL 3387158, at *3 (N.D. Ill. June 20, 2016) (same); Paz, 2016 WL 6833932, at *4–5 (same); *Evans*, 2016 WL 6833930, at *2 (same); *see also Bowse*, 218 F. Supp. 3d at 751 (stating "the FDCPA does not require the use of particular words to dispute a debt"). What is more, the letter contains only 8 short sentences written in a legible typeface. It would be virtually impossible to read the letter without knowing that the sender disputed the debt's accuracy.

PRA further argues that Baranowski's attorneys had no authority to convey to PRA that she disputed the debt. PRA's Mem. Supp. Summ. J. at 5. "So long as a plaintiff can show that an attorney

5

acted on [plaintiff's] behalf and made the determination to indicate that the Debt was disputed, the letter from a plaintiff's attorney constitutes a communication on a plaintiff's behalf." *Gomez*, 2016 WL 3387158, at *4. After PRA sued her, Baranowski hired attorneys during the first week of October 2014. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8. She met with her attorneys to review her credit report and told them that, based on her memory, the debt should have been around $700 or $800, rather than $1,550.00.[3] *Id.* ¶¶ 9–10. On October 17, 2014, her attorneys sent the above-described letter disputing the debt. *Id.* ¶ 11. The undisputed facts in the record show both that Baranowski believed her reported debt was inaccurate and that her attorneys were authorized to communicate the dispute to PRA. Based on the summary judgment record, no reasonable jury could find that the debt was not disputed.

### B. Whether PRA Communicated Information Which Was Known To Be False or Which PRA Should Have Known Was False

The parties agree that after PRA received and reviewed the October 17, 2014 letter, PRA provided credit information to credit-reporting agencies without communicating that the debt was disputed. *Id.* ¶ 15; Def.'s LR 56.1(a)(3) Stmt. ¶ 1. But PRA contends that, regardless of whether the debt was disputed, it did not know the debt was disputed because the letter was faxed to PRA's general counsel's fax line, rather than the disputes fax line. This is the precise argument that PRA raised in *Flores*, 2017 WL 5891032, at *3. The *Flores* court rejected the argument, stating that "[n]othing about § 1692e(8) requires a dispute to be raised in any particular way." *Id.* Although the court recognized the possibility of a factual scenario in which a particular method of communicating might be unreasonable, the court held that the situation in which a letter is sent to PRA's legal department was not unreasonable, especially where PRA had read and processed the letter. *Id.*

This case presents identical facts, and the Court finds *Flores* persuasive. The method of communication in this case—sending the letter to PRA's general counsel's fax line—apprised PRA of

---

[3] PRA's belief that Baranowski's dispute of the debt was invalid is irrelevant. *See Bowse*, 218 F. Supp. 3d at 753 ("The FDCPA does not permit debt collectors to withhold the disputed nature of debts, even in instances when the debt collector considers that dispute invalid.")

6

the dispute because the letter was sent to a department that should have reasonably anticipated receiving communication from a debtor's attorney. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11. Moreover, it is undisputed that PRA had read and processed the letter on the day it was received. *Id.* ¶ 12. Accordingly, the undisputed facts show that PRA should have known that the debt was disputed, and yet, PRA imparted Baranowski's credit information to credit-reporting agencies without communicating that the debt was disputed.

C.     Materiality of the Violation

PRA nonetheless argues that, even if the debt was disputed and PRA had failed to communicate the dispute to credit-reporting agencies, the violation was not "material." Each of the cases PRA cites in support, however, address whether a debt collector's communication *to a debtor* was materially misleading such that it would confuse an unsophisticated consumer. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009); *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 627 (7th Cir. 2009); *Hahn v. Triumph P'ships*, 557 F.3d 755, 757–58 (7th Cir. 2009); *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645–46 (7th Cir. 2009). Because the communication at issue in this case was directed *to credit-reporting agencies*, not the debtor, PRA's reliance on these cases is misplaced.

*Wilhelm v. Credico, Inc.* in more on point. 519 F.3d 416, 418 (8th Cir. 2008). In *Wilhelm*, the Eight Circuit held that § 1692e(8)'s language prohibiting debt collectors from "[c]ommunicating . . . credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" is "rooted in the basic fraud law principle that, if a debt collector elects to communicate 'credit information' about a consumer, it must not omit *a piece of information that is always material, namely, that the consumer has disputed a particular debt.*" *Id.* (emphasis added). Though the Seventh Circuit has not yet had the occasion to examine the issue, other courts in this district have followed *Wilhelm* and have held that information that a debt is disputed is an

7

"extremely pertinent piece of information" having "far reaching consequences" that could never "be deemed an immaterial aspect of the debt." *See Paz*, 2016 WL 6833932, at *5; *Bowse*, 218 F. Supp. 3d at 753; *Gomez*, 2016 WL 3387158, at *4. The Court agrees with the reasoning in *Wilhelm*, *Paz*, *Bowse*, and *Gomez*. That a debt is disputed is pivotal information upon which credit-reporting agencies rely when determining a debtor's credit score. The Court therefore holds that no reasonable jury could find the violation immaterial.

### D. Bona Fide Error Defense

Finally, PRA asserts the affirmative defense of bona fide error. "To qualify for the bona fide error defense, [the debt collector] must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error . . . ; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The debt collector has the burden to establish these elements by a preponderance of evidence. 15 U.S.C § 1692k(c).

PRA has failed to meet its burden in establishing that the violation was not intentional and that the error resulted from a bona fide error. The parties agree that the October 17, 2014 letter stated that "the amount reported is not accurate," and that PRA read and processed the letter. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 11–12; *see* Def.'s Ex. C, 10/17/14 Letter from Attorney Finko to PRA. As indicated above, this statement so clearly and unambiguously disputed the amount of the debt that PRA could not sincerely or genuinely have mistaken its meaning. Nevertheless, PRA then communicated Baranowski's credit information to credit-reporting agencies without stating that the debt was disputed. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 15. Where a debt collector receives and reads an unambiguous communication that a debt is disputed but still reports to credit-reporting agencies that the debt is not disputed, the debt collector's indifference to the harmful consequences to the debtor is a form of

intentional wrongdoing.  *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 419 (1997) ("Deliberate indifference is thus treated, as it is elsewhere in the law, as tantamount to intent.").

Finally, PRA has not met its burden in establishing that it maintained procedures reasonably adapted to avoid any such error.  The FDCPA's "broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).

PRA points to evidence regarding the training of its disputes department representatives during the relevant timeframe.  *See* Def.'s LR 56.1(a)(3) ¶¶ 25–31.  But because PRA has not provided any evidence that the October 17, 2014 letter was reviewed by a disputes department representative, it is unknown whether such training is relevant.  PRA has failed to establish by a preponderance of the evidence (1) that PRA's legal department representatives, who received the faxed letter, had been trained to look for indications of a disputed debt; (2) that legal department representatives were trained to forward letters with such indications to the disputes department; (3) that the legal department forwarded the letter at issue to the disputes department; and (4) that anyone in the disputes department had reviewed the letter in this case.

Because PRA has not established any of the elements of the bona fide error defense by a preponderance of the evidence, the Court holds that the defense is inapplicable.  The Court thus grants summary judgment in Baranowski's favor and denies PRA's cross-motion.

## **Conclusion**

For the reasons provided herein, the Court grants Baranowski's motion for summary judgment [84] and denies PRA's cross-motion for summary judgment [89].  A status hearing is set for April 19, 2018, at 9:00 a.m.

**SO ORDERED**                                    ENTERED   3/29/18

_____
**John Z. Lee
United States District Judge**